IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SIMEER SPRY | CRIMINAL ACTION<br><br>NO. 20-84 |

**MEMORANDUM RE: MOTION TO SUPPRESS**

**Baylson, J.**                                                                                                       **December 15, 2021**

The Defendant in this case is charged with possession of a firearm by a felon, pursuant to 18 U.S.C. § 922(g)(1). Defendant filed a Motion to Suppress Evidence, arising out of his arrest on May 9, 2021, pursuant to which the Court had an evidentiary hearing on November 30, 2021. Counsel filed excellent briefs before and after the hearing.

**I.   FACTS**

The Defendant was driving a vehicle on the 3100 block of North 22nd Street in Philadelphia, when a police officer driving a vehicle in the back of the Defendant's vehicle, observed what he thought were "heavily tinted" windows, and followed the Defendant into a gas station.

At approximately 1:22 am, Officer Baker noticed Defendant's tinted back windshield and tinted driver-side window. Officer Baker turned on his lights and sirens. Defendant continued to drive half a block and turned into the gas station.

Officer Baker exited his patrol car and approached the driver side while his partner approached the passenger side. Defendant opened his car door rather than roll down the window, saying to Officer Baker that he can't roll down the car window because he had just gotten the car windows tinted.

As Officer Baker credibly testified at the hearing, "The windows appeared to almost be black from the front all the way to the back. I do not think I even knew how many occupants

were in the vehicle.". The officer gave some further details about the difficulty seeing inside the vehicle.

Pennsylvania Vehicle Code, § 4524, discusses "windshield obstructions and wipers" and has some specific language about tinted windows as follows:

> No person shall drive a motor vehicle with any sign, poster or other nontransparent material, including ice or snow, upon the side wings or side or rear windows of the vehicle which materially obstructs, obscures or impairs the driver's clear view of the highway or any intersecting highway.

75 Pa. Stat. and Cons. Stat. Ann. § 4524.

The Court also observed certain photographs of Defendant's vehicle. Based on the testimony and these photographs, the Court finds that there was reasonable suspicion that the Defendant may have violated this section of the Motor Vehicle Code which warranted the officer approaching the vehicle and questioning defendant.

Officer Baker noted that Defendant was leaning forward, rather than leaning backwards. Defendant's left hand was visible on the car door, but his right hand was not visible to Officer Baker. Officer Baker considered this suspicious and noted that Defendant might have been leaning forward and down to stash something under the car front seat.

Within approximately 30 seconds, Officer Baker smelled marijuana and asked if Defendant had been smoking, to which Defendant replied that he had been smoking earlier that day. Officer Baker and Defendant spoke for approximately two minutes. Officer Baker took Defendant's identification and registration, and his partner took the passenger's identification. A records check by police radio disclosed that the passenger had an outstanding arrest warrant, which warranted a more detailed investigation, which Officer Baker requested by police radio.

Officer Baker returned to the car and required Defendant and the passenger to get out of their car and sit in the back of the patrol car. Officer Baker then searched the passenger side of

the vehicle, where he found a replica gun (BB gun).  Officer Baker had been aware of a slew of robberies in the past week where individuals in the area had been robbed from behind (possibly with a fake gun) so he called in to the police radio dispatcher to get more information and a description of the suspect.

This check took approximately 20 minutes. However, during this time Officer Baker continued to search the defendant's vehicle.  Officer Baker searched the back of the vehicle, first from the passenger-side back door and then from the driver side back door.  While searching under the driver's side seat from the driver-side back door, Officer Baker noticed the floor mat bunched up underneath the driver's seat. Officer Baker removed the mat and found a 9mm gun.  Officer Baker stated that it took approximately 10 minutes to find the gun.  Officer Baker stated that he finished all of his activity as to the car stop at around 1:50 am.

During a telephone call from a prison at a later date, Defendant mentioned to an unknown female that Officer Baker said that he wasn't interested in searching the car for the presence of marijuana.  During this telephone call, Defendant specifically acknowledged to the woman to whom he was speaking, that he had been smoking marijuana and that the police had "probable cause." As testified by Detective Fife, this evidence is important in supporting the officers' credibility.

After argument by counsel, Officer Baker was recalled to the witness stand and asked specifically what the time intervals were from the moment that he stopped the car.  He summarized the different events but testified that the interval from when he stopped the car to when he found the gun under the seat, was 10-15 minutes.

The Court finds that Officer Baker's testimony was fully credible. He testified clearly and his testimony was supported by physical evidence, such as photographs of the car, and the statements on the phone call by the defendant.

## II.     DISCUSSION

The parties were asked to comment on this Court's prior Opinion in <u>United States v. Foushee</u>, 2020 WL 6582673 (EDPA 2020), which reviewed in some detail Supreme Court and Third Circuit precedential decisions on stopping motor vehicles for traffic violations, and what might constitute a proper search of a vehicle, resulting in finding a gun in the vehicle.

The Court finds that the testimony of Officer Baker distinguishes this case from the decision of the Supreme Court, in which the defendant relies heavily on, <u>Rodriguez v. United States</u>, 575 U.S. 348 (2015), which held, on facts significantly different from the facts in this case, that the police cannot, after a car stop, purposely delay searching the car in order to get additional evidence.  The facts of this case show that police officers were engaged in a steady stream of activities once the car was stopped, until the gun was found, which clearly established probable cause to arrest the defendant.  <u>See Arizona v. Johnson</u>, 555 U.S. 323, 333 (2009) (holding that an officer's inquiries into matters unrelated to the justification for the traffic stop are permissible and that police may require the driver and passengers to exit the vehicle and submit to a pat-down search); <u>see also Pennsylvania v. Mimms</u>, 434 U.S. 106, 111-12 (1977) (holding that police may order persons out of a car without any particularized suspicion).

In <u>Foushee</u>, this Court concluded that the law gives certain latitude to police officers encountering traffic violations or other suspicious activity, from which a reasonable police officer has grounds to stop a car, and question the inhabitants, which may lead to, as in this case, an appropriate search of the vehicle. "It is…well-settled that a police officer executing a stop may

exercise reasonable superintendence over the car and its passengers." United States v. Bonner, 363 F.3d 213, 216 (3d. Cir. 2004); see Maryland v. Wilson, 519 U.S. 408 (1997) (extending this rule to apply to passengers).  Motor vehicles are not homes or businesses, and as experience has shown, particularly in high crime areas, the frequency of "guns concealed in cars" presents a major crime threat to law-abiding citizens of these neighborhoods.  The search of motor vehicles is permissible if "the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rationale inferences of those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." Michigan v. Long, 463 U.S. 1032, 1049-50 (1983) (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968)).  Reasonable police activity based on the totality of circumstances, such as that occurred in this case, does not violate constitutional protections. "To determine whether reasonable suspicion exists, we must consider the 'totality of the circumstances – the whole picture.'" See United States v. Robertson, 305 F.3d 164, 167 (3d. Cir. 2002) (quoting United States v. Sokolow, 490 U.S. 1, 8 (1989)).

The Court concludes that given the overall credible testimony by Officer Baker in this case, and the corroborating evidence discussed above, Defendant's Motion to Suppress (Doc. No. 39) must be DENIED.

O:\CRIMINAL DEPUTY (Lori)\MEMOS\20cr84 Memorandum Re Motion to Suppress.docx